(No. 33109.—

ELGIN STORAGE AND TRANSFER COMPANY, Appellant, *vs.* GEORGE R. PERRINE *et al.*, Appellees.

*Opinion filed December 29, 1953.*

Eugene L. Cohn, and Bernard G. Colby, both of Chicago, for appellant.

Latham Castle, Attorney General, of Springfield, (Harry R. Begley, William C. Wines, Thomas S. Chuhak, and James Thomson Otis, of counsel,) for appellees George R. Perrine *et al.;* Little, Clausen & Presbrey, of Aurora, and John P. Memer, and Henry Wise, both of Danville, for other appellees.

Mr. Justice Daily delivered the opinion of the court:

Elgin Storage and Transfer Company, a corporation, filed this suit in the circuit court of Kane County for a declaratory judgment that the Illinois Motor Carrier of Property Act, (Ill. Rev. Stat. 1953, chap. 95½, pars. 282.1 to 282.30,) enacted by the 1953 General Assembly and approved July 7, 1953, is unconstitutional and void in its entirety. Section 3(g), (par. 282.3(g),) forms the sole basis for the attack on the statute, and of that subparagraph it is complained: (1) that its provisions provide an improper classification and a discrimination against the plaintiff company and others similarly situated, resulting in a deprivation of their property without due process of law and a denial of the equal protection of law as guaranteed by the State and Federal constitutions; (2) that its pro-

visions are also constitutionally deficient in that they are vague, indefinite, uncertain and ambiguous and without sufficient standards or guides by which the Illinois Commerce Commission, which is charged with the administration of the act, or the courts, can determine what motor vehicles used upon the public highways of the State in the transportation of property for hire are to be exempt from the act; and (3) that the provisions of subparagraph (g) are not severable from the act, and the entire act, therefore, must fall. For these reasons the complaint prayed an injunction restraining the members of the Illinois Commerce Commission, the Attorney General, and the Director of the Department of Public Safety, who were named as defendants, from enforcing the provisions of the act.

The named defendants filed a motion to dismiss the complaint for failure to state a cause of action and for want of equity, alleging that the act is constitutional and valid in the respects complained of and that by the terms of section 27 thereof, (Ill. Rev. Stat. 1953, chap. 95½, par. 282.27,) section 3(g) is completely severable and does not invalidate the remaining portions of the act. Subsequently, the circuit court granted leave to thirty-three divers trucking concerns to intervene as parties defendant and they too filed motions to dismiss in substantially the same terms as the motion of the principal defendants. No evidence was offered and, upon the pleadings made, the trial court sustained the motions to dismiss the complaint. Since a substantial and important constitutional question is involved, plaintiff has appealed directly to this court for a review of the decree dismissing its complaint.

Briefly summarized, the effect of the act under consideration, if valid, is to provide a comprehensive scheme for regulation of the business of motor carriers for hire, to place the administration of the act in the Illinois Commerce Commission and to provide penalties for its violation. Plaintiff does not challenge the reasonableness of

the regulations contemplated or the power of the legislature to impose them but asserts only that section 3(g) enacts an unconstitutional exemption from the operation of the act with respect to "Motor vehicles while being used for the transportation of agricultural supplies, livestock, agricultural products or commodities." Before looking to the contention of the parties, we quote and examine the whole of section 3 of the act, in the setting of which subparagraph (g) must be construed before its validity can be determined:

"§ 3. EXEMPTIONS. This Act shall not apply to:

"(a) Persons engaged exclusively in the transportation of the United States Mail.

"(b) Motor vehicles controlled and operated by a cooperative association as defined in 'The Agricultural Cooperative Act,' approved June 21, 1923, as amended.

"(c) The transportation of farm or dairy products, livestock, poultry, fruits and agricultural products, by the producer thereof or by him on behalf of other such producers where such transportation is merely an incident to the principal business or occupation of farming, or livestock raising.

"(d) Motor vehicles owned, controlled and operated by any farmer in the transportation of agricultural and dairy products while owned by the producer of the products, including landlord and tenant, from farm to a market, warehouse, dairy or shipping terminal, or for the transportation of agricultural products, livestock, poultry, eggs, machinery, materials and supplies essential to farm operation from market or shipping point to farm or from one farm to another farm, or the transportation of livestock, poultry, fruits and agricultural and dairy products from a farm to a regularly organized fair or exhibit, and return.

"(e) Farm tractors or any other agricultural machinery self-propelled or transporting or drawing agricultural implements on the public highways or used primarily in agri-

cultural pursuits or farm wagons or farm trailers, pulled by farm tractors, or any other agricultural machinery used primarily in agricultural pursuits.

"(f) The reciprocal, casual or occasional transportation for-hire of property in intrastate commerce by any person who is regularly engaged in business other than the business of transporting property of others for-hire.

"(g) *Motor vehicles while being used for the transportation of agricultural supplies, livestock, agricultural products or commodities.*

"(h) Motor vehicle transportation of property by any person incident to or in furtherance of any private commercial enterprise of such person other than the business of transporting property of others for-hire."

The plaintiff, asserting that there is a presumption that the words were intended as written and that the literal meaning of the statute is the true one, interprets subparagraph (g) as applying to, and exempting absolutely from regulation, all persons engaged in operating motor vehicles while being used for the transportation of the specified commodities. Since, under such an interpretation, persons engaged in the business of transportation of property for hire by motor vehicle would be exempt from regulation when operating vehicles used for transportation of the specified commodities, in whole or in part, while persons operating motor vehicles for hire not so engaged would be required to comply with the regulations imposed, the plaintiff insists that the provision constitutes an improper classification and a discrimination against plaintiff and others similarly situated who do not engage in the hauling of the specified commodities for hire.

The defendants contend, as the trial court held, that the exemption is not to be read as broadly as its text or out of context with the entire act or its companion exemptions. It is argued that when subparagraph (g) is read in the light of the clear intention of the legislature to regulate

"the business of transportation" and in the light of its setting in section 3 dealing with "exemptions," the language of the subparagraph means no more than to emphasize the exemption of those who haul *their own* agricultural supplies and commodities.

In an ably-written and well-considered memorandum opinion, the trial court commented upon plaintiff's charges that section 3(g) constitutes improper classification and discrimination, and that it is vague, indefinite, uncertain and ambiguous, as follows:

"This contention presupposes that the text of this provision must be read literally, no matter what the consequences of such a literal reading might be.

"When this provision is read in the context of its setting in Section 3 of the Act and against the background and purview of the Act, it is evident that the function of this provision was to reinforce, confirm and make clear the Legislature's intention that the Act was not to apply to those who transport their own 'agricultural supplies, livestock, agricultural products or commodities.' * * *

"The plaintiff has, indeed, demonstrated great difficulties of interpretation and serious constitutional questions that arise if the Act is to be read as literally depriving the Commission of authority over motor vehicles used in transportation for hire while they happen to be filled wholly or partially with 'agricultural supplies, livestock, agricultural products or commodities.' Surely the General Assembly would not enact a statute under which the owner of a truck could, at will, deprive that Commission of the authority with which it is otherwise vested for a few hours or a few days by partially loading his truck with grain, meat, milk or the like."

We find ourselves in accord with the views expressed by the trial court. In *Bode* v. *Barrett*, 412 Ill. 204, wherein this court construed the 1951 truck-licensing provisions of the Motor Vehicle Law, we reiterated the canon of

statutory construction propounded in *Peabody* v. *Russel,* 301 Ill. 439, as follows: "It is a canon of construction well recognized, not only in this court but in courts of other jurisdictions, as it relates to statutes, that the chief purpose is to give effect to the intention of the legislature. In seeking such intention courts are to consider the language used, the object to be attained or the evil to be remedied. This may involve more than a literal meaning of the words. That which is within the intention is within the statute though not within the letter, and though within the letter, it is nevertheless not within the statute if not likewise within the intention." Without detailing all of the specific provisions of the statute under consideration, it may be said, in general, that the Illinois Motor Carrier of Property Act, establishes a plan for the regulation of motor carriers of property for hire similar to the regulation of public utilities under the Illinois Public Utilities Act. (Ill. Rev. Stat. 1953, chap. 111⅔, pars. 1-95.) It is thus seen that the basic scheme of the legislature is the granting of limited monopoly privileges to motor carriers of property for hire (by certificates, permits and registrations) with the concurrent imposition of regulation of service and rates. An analysis of the act shows that it is not the regulation of motor vehicles as such, but the regulation of the business of transportation, for the legislature expressly declares, in section 1 thereof, that it is "the business of the transportation of property for-hire by motor vehicle" which is to be supervised and regulated. It is, therefore, with the expressed legislative purpose and design in mind that the exemptions in section 3 must be read and in particular subparagraph (g) thereof.

The touchstone of modern statutory construction is not the purport of the text but the import of the context. To read subparagraph (g) literally, as plaintiff urges, would be to permit any carrier, otherwise subject to the act, to avoid the regulation to which he was intended to be sub-

jected by the device of transporting some (and no one knows how much or how little) of the specified agricultural commodities. The plaintiff's own argument, by demonstrating the complete impracticability of such a construction, also demonstrates that it was not the construction intended by the legislature. We hold, therefore, that section 3(g) was intended to do no more than to emphasize the exemption of those who are not engaged in the business of motor transportation for hire but who haul their own agricultural supplies and commodities, and that it is, therefore, not subject to the constitutional insufficiencies contended for.

Such a conclusion obviates the necessity of determining whether the provisions of section 3(g) are severable from the act. The decree of the circuit court of Kane County dismissing plaintiff's complaint was correct and is affirmed.

*Decree affirmed.*

Mr. JUSTICE MAXWELL, dissenting.